A. David Youssefyeh (185994)
Liza Youssefyeh (192945)
A|D|Y Lᴀᴡ Gʀᴏᴜᴘ, P.C.
1925 Century Park East, Suite 1380
Los Angeles, California  90067
Telephone:   (310) 772-2872
Facsimile:    (310) 772-0020

Attorneys for Plaintiff and Creditor,
KOUROSH MALEKAN

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PETER PEDRAM ETESAMNIA | Adv. No.  2:13-ap-01695-TD<br><br>Case No. 2:12-bk-43661-TD<br><br>Chapter:  7 |
| KOUROSH MALEKAN, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>PETER PEDRAM ETESAMNIA, an individual,<br><br>          Defendant. | **FIRST AMENDED ADVERSARY COMPLAINT FOR:**<br><br>1)  **DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(2)(A);**<br>2)  **DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(2)(B);**<br>3)  **DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(6);**<br>4)  **DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(3)(B);**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED ADVERSARY COMPLAINT

Plaintiff, Kourosh Malekan ("Malekan"), hereby complains against Defendant Peter Pedram Etesamnia ("Etesamnia") as follows:

## JURISDICTION

1.      This Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157 and 11 U.S.C. § 523 because this proceeding arises in or is related to the pending bankruptcy case of *In re Peter Pedram Etesamnia*, presently pending before the United States Bankruptcy Court for the Central District of California.

2.      This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

## PARTIES

4.      Plaintiff <u>Kourosh Malekan</u> (hereinafter "Plaintiff") is, and at all relevant times mentioned herein was, an individual living in the County of Los Angeles, State of California.

5.      Plaintiff is informed and believes that Defendant <u>Peter Etesamnia, aka Pedram Etesamnia</u> ("Etesamnia" or "Defendant") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California. <u>Mr. Etesamnia is also a convicted criminal (18 U.S.C. § 1030(a))</u>.

6.      Plaintiff is informed and believes that third-party <u>Jalinous Nehouray</u> ("Nehouray") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

7.      Plaintiff is informed and believes that third-party <u>Empire Global Mint, Inc.</u> ("Empire") is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County.

8.      Plaintiff is informed and believes that third-party <u>Pars Mint, Inc.</u> ("Pars") is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County.

9.      Plaintiff is informed and believes that third-party <u>Demetrius Navarro</u> ("Navarro") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

10.     Plaintiff is informed and believes that third-party <u>D Street Films</u> ("D Street") is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles County.

11.     Hereinafter, Nehouray, Empire, Pars, Navarro and D Street will be jointly referred to as the "State Court Defendants."

12.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendant Etesamnia was the agent, employee, partner, member, subsidiary or related corporation, alter ego and/or joint venturer of each of the State Court Defendants and was acting within the course and scope of that relationship and with the knowledge, consent and/or ratification of each of the State Court Defendants.

## **GENERAL ALLEGATIONS**

13.     The Defendant is an individual residing in the County of Los Angeles, State of California, is the debtor in bankruptcy case no. 2:12-bk-43661-TD which was filed on October 4, 2012 under Chapter 7 of the U.S. Bankruptcy Code ("Petition").

14.     Plaintiff is the holder of a claim against Defendant arising prior to the filing of the Petition.

15.     Plaintiff was not listed as a creditor of Defendant in the original schedules that Defendant filed with the Court nor was Plaintiff otherwise aware of the Petition.

16.     Plaintiff has filed a Complaint against Defendant in Los Angeles Superior Court as Case No. SC118749 ("State Court Matter"). A copy of the First Amended Complaint in that case is attached hereto Exhibit A and incorporated herein by this reference.

17.     On June 4, 2013, a process server for the Plaintiff served Defendant with a copy of the First Amended Complaint. On June 5, 2013, Defendant amended his schedules and named Plaintiff as a creditor.

FIRST AMENDED ADVERSARY COMPLAINT

18.    The State Court Matter is currently pending in the Los Angeles Superior Court. Plaintiff is filing this Complaint to reserve his rights against the Defendant but requests that this matter be stayed pending outcome of the State Court Matter.

19.    In particular, Plaintiff's claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.

20.    In addition, Plaintiff's claims arise under non-bankruptcy law and can be most expeditiously resolved in a non-bankruptcy forum.

## **ALTER EGO ALLEGATIONS**

21.    At all times mentioned herein Defendant Etesamnia and third-party Nehouray, and each of them, were and are the shareholders, and/or directors, and/or officers, and/or agents, and alter egos of Empire and Pars, and in doing the things herein described, Defendant Etesamnia and Nehouray were acting within the scope of their authority as such shareholders, and/or directors, and/or officers, and/or agents, and alter egos of Empire and Pars.

22.    There exists, and at all times herein mentioned existed, a unity of ownership between Defendant Etesamnia and Nehouray on the one hand, and Empire and Pars and the other hand, such that any individuality and separateness between Defendant Etesamnia and Nehouray and Empire and Pars have ceased and Empire and Pars are the alter egos of Defendant Etesamnia and Nehouray.

23.    Plaintiff is informed and believes that Empire and Pars are, and at all times herein mentioned were, the alter egos of Defendant Etesamnia and Nehouray and there exists, and at all times herein mentioned has existed a unity of interest and ownership between them such that any separateness has ceased to exist and that Defendant Etesamnia and Nehouray may have used the assets of the corporations for their personal use, causing the assets of the corporations to be transferred to them without adequate consideration, and that they also withdrew funds from Empire and Pars' bank accounts for their personal use.

24.    Plaintiff is informed and believes that Defendant Etesamnia and Nehouray, on one hand, and Empire and Pars, on the other hand, are and at all times herein mentioned were,

alter egos of each other and there exists, and at all times herein mentioned there has existed a unity of interest and ownership between them such that any separateness between them has ceased to exist in that Defendant Etesamnia and Nehouray completely, controlled, dominated, managed and operated Empire and Pars and commingled their assets with their personal assets to suit the convenience of Defendant Etesamnia and Nehouray.

25.    Plaintiff is informed and believes that Empire and Pars are, and at all times herein mentioned were, a mere shell, instrumentality, and conduit through which Defendant Etesamnia and Nehouray carried on their business in corporate name exactly as they had conducted prior to incorporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Empire and Pars and Defendant Etesamnia and Nehouray does not exist and at all times herein mentioned did not exist.

26.    Plaintiff is informed and believes that at all times mentioned herein, including but not limited to the time they entered into the contracts with Plaintiff, Empire and Pars were severely undercapitalized and were unable to satisfy their financial obligations to Plaintiff such that the adherence to the fiction of separate existence between Empire and Pars, on one hand, and Defendant Etesamnia and Nehouray and on the other hand, would sanction fraud and promote injustice.

27.    Plaintiff is informed and believes that adherence of fiction of separate existence of Empire and Pars as entities distinct from Defendant Etesamnia and Nehouray would permit an abuse of the corporate privilege and sanction fraud and promote injustice, as Defendant Etesamnia and Nehouray have deliberately rendered Empire and Pars financially unable to respond to a money judgment.

//

//

FIRST AMENDED ADVERSARY COMPLAINT

# FACTS

## *The Commemorative Coins*

28.    Plaintiff Kourosh Malekan and third-party Nehouray were friends for many years.

29.    On or about October 15, 2007, Nehouray introduced Plaintiff to Defendant Etesamnia and told him about a business idea that Nehouray was planning to execute with Defendant Etesamnia. In particular, Nehouray and Defendant Etesamnia represented to Plaintiff they had formed two companies, Empire and Pars, for the purpose of producing commemorative gold coins for sale to the public ("Empire" and "Pars," collectively, the "Companies").

30.    Nehouray and Defendant Etesamnia represented to Plaintiff that Pars was formed to produce and sell a gold coin commemorating Iranian Statesman Amir Kabir, a historical figure famous in Iran (there is a long tradition of Iranians taking gold coins as gifts for each other for various celebratory events, including weddings), and that Empire was formed for the purpose of producing and selling coins bearing licensed images from Fox studios and Playboy.

31.    In particular, from October 2007, Nehouray and Defendant Etesamnia, individually and jointly, at meetings in Nehouray's home, Defendant Etesamnia's home and restaurants, further represented to Plaintiff that he should invest into Empire and Pars, based on the following:

> 1)    Nehouray and Defendant Etesamnia believed in the businesses so much they would be investing their own funds into the Companies;
>
> 2)    The funds Plaintiff would invest into the Companies were being used solely for the purpose of creating, manufacturing and marketing the coins herein described (*i.e.* Amir Kabir, Fox and Playboy).
>
> 3)    Nehouray and Defendant Etesamnia had the know-how, relationships and connections to get the best pricing for creating, manufacturing and marketing such coins;

FIRST AMENDED ADVERSARY COMPLAINT

4)     Defendant Etesamnia had connections in Dubai that he was specifically going to use for the marketing and sale of the Amir Kabir coins, and that there was an extensive demand for such coins;

5)     That the progress for creating and manufacturing the coins was imminent, and that Plaintiff would be able to see the dies, sculpts or molds of the coins he had paid for;

6)     That creating and manufacturing the molds for each of the three types of coins would cost $80,000 each;

7)     That the licensing for the Fox characters would cost $50,000;

8)     That in return for an investment of $160,000 into the two Companies, Plaintiff would receive a 50% equity share, or have the option of asking for the return of his investment with interest, without right to profits.

32.    Based on these representations, over the next 30 days, Plaintiff gave Defendant Etesamnia, Nehouray, Empire and Pars $160,000 in cash and checks.

33.    Soon after providing the funds to Defendant Etesamnia and Nehouray, however, Defendant Etesamnia and Nehouray started asking Plaintiff for more funds, representing the costs of development and production of the coins were higher than what they expected, but that their licensing and marketing plans were progressing well.

34.    During this time Plaintiff Malekan was the primary caregiver to his cancer ridden father and was unable to devote a lot of time to following Nehouray's and Defendant Etesamnia's progress. As such, he was unable to verify Defendant Etesamnia's representations concerning the business. Defendant Etesamnia and Nehoray, aware of Plaintiff's fragile mental state and his lack of attention to their business dealings, made multiple assurances and representations about the funds required and the progress of the Companies and the coins, over the next year, and reliance thereon, Plaintiff provided Nehouray, Defendant Etesamnia, Empire and Pars with another $200,000 in cash and checks as investment and loans.

– 7 –

35.    In 2009, Nehouray and Defendant Etesamnia showed Plaintiff a "sample" Amir Kabir coin and showed him plans for other coins that are "about to be produced." As such, Nehouray and Defendant Etesamnia kept stringing Plaintiff along, and, in November 2009, Plaintiff made one last payment to Nehouray and Defendant Etesamnia in the amount of $12,500.

36.    Until in or about June 2010, Nehouray and Defendant Etesamnia continued to give Plaintiff updates on the alleged work they were doing on the project and continued to represent to Plaintiff they were moving forward on the plan to manufacture the coins.

37.    To date, however, Nehouray and Defendant Etesamnia have not only been unable to produce a single commemorative coin, they have been unable to produce the dies, molds and sculpts that were to serve as the basis of the coins.  Further, they have refused to provide a full accounting from the Companies for the monies that the Companies allegedly spent in trying to manufacture the coins.

38.    At the time Defendant Etesamnia and Nehouray made the representations, in 2007, and thereafter, when they continued to make further representations to Plaintiff to get more funds, they knew them to be untrue. In particular, the untrue statements made by Defendants to Plaintiff Malekan, include, but are not limited to the following:

      1)    Nehouray and Defendant Etesamnia did not intend to, and never did, invest their own funds into the Companies;

      2)    The funds Plaintiff invested into the Companies were not being used solely for the purpose of creating, manufacturing and marketing the coins herein described (*i.e.* Amir Kabir, Fox and Playboy), and were in fact used for personal expenses and other business ventures.  Specifically, with respect to Defendant Etesamnia, Plaintiff's funds were used to create and run other "gold" coin companies, real estate ventures, loan modification ventures, and film/entertainment ventures (including but not limited to D Street Films), and purchase Rolex watches, and other antiques, coins and rugs sold to third parties; as such, the final two payments for the Playboy licensing rights were

– 8 –

not paid, despite the fact that Plaintiff had paid the first two payments of $25,000 (total $50,000), and all costs associated with the Playboy productions (including packaging, molds, sculpting, etc.) and profits were lost;

3) Nehouray and Defendant Etesamnia did not have the know-how, relationships and connections to get the best pricing for creating, manufacturing and marketing such coins, and in fact, among other things, they allegedly only sold one set of coins to Dubai, for which they allegedly sent $100,000 worth of coins to Dubai without allegedly confirming nor receiving payment, in addition, they even failed to pay the vendors for which they had told Plaintiff they need money, and Plaintiff had provided them with money, to pay to manufacture the coins;

4) Defendant Etesamnia used his connections in Dubai to sell other products, and used Plaintiff's funds for trips to Dubai and Iran to advance his other ventures, and/or sell coins, including Amir Kabir coins (to the extent they were even created), under another company name, including but not limited to "Simia;"

5) The progress on the creation and manufacturing of the coins were not imminent, as represented, and to this day, Plaintiff has not seen the dies, sculpts or molds of any of the coins he had paid for, which he understands and believes were each converted by Defendant Etesamnia for his personal use;

6) The molds for the coins did not cost $80,000 each, as represented to Plaintiff, but approximately $20,000 total;

7) The licensing for Fox characters did not cost $50,000 as represented to Plaintiff, but only $25,000;

8) In return for his investment of $160,000 into the two Companies, Plaintiff did not receive 50% equity share, nor did he get or was given the option for the return of his investment, because Defendant Etesamnia and Nehouray

– 9 –

intended to use the funds, and did use the funds, as their own personal piggy bank.

39.    To add insult to injury, Plaintiff is informed and believes Defendant Etesamnia, Nehouray and Empire were in a dispute with Fox over the licensing rights, for which they received $135,000 from Fox.  Defendant Etesamnia and Nehouray never informed Plaintiff of the receipt of those funds, and never gave him a penny (despite the fact that they also received the return of the $50,000 license fee paid by Plaintiff).

40.    As a result of Defendant Etesamnia's and Nehouray's representations, and Plaintiff's detrimental reliance thereon, Plaintiff has suffered damages, as set forth herein.

### The Movie Production Investment

41.    In, or about, October 27, 2008, Nehouray and Defendant Etesamnia also approached Plaintiff with an investment opportunity in a movie.  Nehouray and Defendant Etesamnia presented to Plaintiff that they had invested in the film project, and that he too should invest in the project.  As such, they introduced Plaintiff to Navarro.

42.    Prior to making an investment, Plaintiff met with Navarro, who told him that he is the President of D Street and that Nehouray and Defendant Etesamnia had already invested in D Street and that the purpose of the investment was to create a movie.

43.    The terms of the investment were as follows: 1) Plaintiff would get credit as "Co-Executive Producer;" and 2) Plaintiff would receive 13.33% of the films' gross receipts.

44.    Based upon Nehouray, Navarro and Defendant Etesamnia's representations that: 1) Nehouray and Defendant Etesamnia had invested in the movie and that it was about to be made and get distribution, Plaintiff invested $25,000 in a film project with Defendant D Street.

45.    Plaintiff is informed and believes that Nehouray and Defendant Etesamnia had in fact never invested in the movie, and that D Street Films and Demetrius Navarro were fronts for Nehouray and Defendant Etesamnia and that to the extent Defendant Etesamnia and Nenouray "put in" any funds, it was from the funds given for the licensing, creation,

manufacturing and marketing of the coins, and/or after Plaintiff invested $25,000 in the movie, Nehouray, Navarro and Defendant Etesamnia, split up his funds for their personal gain and that there was no movie to be made.

46.    Although Plaintiff has asked Nehouray, Defendant Etesamnia and Navarro for information concerning the movie, and in spite of the fact that Navarro, Nehouray and Defendant Etesamnia have made multiple representations to Plaintiff that the movie is being made, to date, there is no movie and no accounting of Plaintiff's funds invested in the movie.

*The Supplement Investment*

47.    In or about September 2008, Defendant Etesamnia and Nehouray represented to Plaintiff they had connections to get licensing from BTI, a nutritional supplement company, for overseas distribution rights.  They represented to Plaintiff that should he invest $21,500, for 50% of the profits, or return of investment (with interest), they would each jointly put in the same amount of funds.

48.    Based on their representations, and in reliance thereon, Plaintiff gave BTI a check in the amount of $21,500.  However, Defendant Etesamnia and Nehouray knew their representations were not true, and had no intent to obtain the rights from BTI.  When BTI returned Plaintiff's check to Defendant Etesamnia and Nehouray, they instead took the moneys for themselves, to the detriment of Plaintiff.

49.    Any documents, including financial documents, Defendant Etesamnia and Nehouray gave Plaintiff to induce reliance regarding the financial condition of the Companies, ventures or projects was in fact false.

## FIRST CLAIM FOR RELIEF

## (DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(2)(A))

50.    Plaintiff hereby incorporates by reference paragraph 1 to 49 of this Complaint as if set forth in full herein.

51.     As noted herein above, on multiple occasions, the Defendant Etesamnia obtained money and an extension, renewal, and/or refinancing of credit by false pretenses, a false representation, and/or actual fraud.

52.     That the representations made by Defendant Etesamnia were false and Defendant Etesamnia knew them to be false at the time that he made them.

53.     That Defendant made said representations with the intent of deceiving Plaintiff.

54.     Plaintiff reasonably relied upon Defendant Etesamnia's representations.

55.     Due to Defendant Etesamnia's representations Plaintiff has been damaged in an amount not less than $500,000.

56.     Based upon the above conduct, the debt owed by Defendant Etesamnia to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).


## **SECOND CLAIM FOR RELIEF**

## **(DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(2)(B))**

57.     Plaintiff hereby incorporates by reference paragraph 1 to 49 of this Complaint as if set forth in full herein.

58.     As noted herein, in order to induce Plaintiff to give him money, Defendant Etesamnia provided Plaintiff with documents respecting the financial condition and/or financial activities of Pars and Empire that were materially false and/or asked Plaintiff to rely upon documents respecting Empire and/or Pars' financial condition and/or financial activities that the Defendant had already provided to Plaintiff that were materially false.

59.     Plaintiff reasonably relied upon Defendant Etesamnia's representations in the documents concerning the financial condition and financial activities of Empire and Pars.

60.     Defendant Etesamnia knew about the falsity in these documents but he nevertheless caused the Plaintiff to believe in these documents and representations with the intent to deceive Plaintiff into giving him money and an extension, renewal, and/or refinancing of credit.

61.     At no time prior to giving money to Defendant Etesamnia, or his alter ego, nor at any time thereafter, did Defendant Etesamnia disclose to Plaintiff that he had no intention of using the money for its intended purpose.

62.     Due to Defendant Etesamnia's representations Plaintiff has been damaged in an amount not less than $500,000.

63.     Based upon the above conduct, the debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

### THIRD CLAIM FOR RELIEF

### (DETERMINATION OF NON-DISCHARGEABILITY 11 U.S.C. § 523(a)(3)(B))

64.     Plaintiff hereby incorporates by reference paragraph 1 to 49 of this Complaint as if set forth in full herein.

65.     As noted herein, Defendant Etesamnia failed to list or schedule Plaintiff as a creditor despite the fact that Plaintiff has been hounding Defendant Etesamnia for years asking for his money back and accusing Defendant of committing fraud.

66.     Plaintiff's claims against Defendant Etesamnia arise out of 11 U.S.C. § 523(a)(2).

67.     Plaintiff had no prior notice of Defendant Etesamnia's bankruptcy until Defendant Etesamnia amended his schedules in June to add Plaintiff as a creditor.

68.     Based upon the above conduct, the debt owed by Defendant Etesamnia to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(3)(B).

        WHEREFORE, the Plaintiff prays for judgment against Defendant Etesamnia as follows:

### ON THE FIRST, SECOND AND THIRD FOURTH CAUSES OF ACTION

1.      That Defendant's debt to Plaintiff is non-dischargeable;

2.      For reasonable attorneys' fees;

3.      For costs of suit incurred herein; and

4.      For such other and further relief that is just and appropriate.

DATED: April 7, 2014

Respectfully submitted,

A|D|Y Law Group, P.C.

By:_____/s/_____

A. David Youssefyeh

Attorneys for Plaintiff and Creditor,
KOUROSH MALEKAN

FIRST AMENDED ADVERSARY COMPLAINT

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of

Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.


DATED: April 7, 2014                    Respectfully submitted,

A|D|Y Law Group, P.C.



By:_____/s/_____

A. David Youssefyeh

Attorneys for Creditor,
KOUROSH MALEKAN

FIRST AMENDED ADVERSARY COMPLAINT

# Exhibit A

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAY 20 2013

John A. Clarke, Executive Officer/Clerk
By: Andre Williams, Deputy

A. David Youssefyeh (185994)
Liza Youssefyeh (192945)
ADLY LAW GROUP, P.C.
1925 Century Park East, Suite 1380
Los Angeles, California  90067
Telephone:   (310) 772-2872
Facsimile:    (310) 772-0020

Attorneys for Plaintiff,
KOUROSH MALEKAN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, WEST DISTRICT

| | |
|---|---|
| KOUROSH MALEKAN, an individual, | Case No.  SC118749 |
|     Plaintiff, | Assigned: Hon. Allan J. Goodman<br>Dept: P |
|     vs. | **FIRST AMENDED COMPLAINT** |
| PETER ETESAMNIA aka PEDRAM ETESAMNIA, an individual; JALINOUS NEHOURAY, an individual; EMPIRE GLOBAL MINT, INC., a California corporation; PARS MINT, INC., a California corporation; DEMETRIUS NAVARRO, an individual; D STREET FILMS, LLC, a California limited liability company; and DOES 1-10,<br><br>    Defendants. | 1. **FRAUD – COINS**<br>2. **FRAUD – MOVIE**<br>3. **NEGLIGENT MISREPRESENTATION – COINS**<br>4. **NEGLIGENT MISREPRESENTATION – MOVIE**<br>5. **STATUTORY UNFAIR COMPETITION**<br>6. **BREACH OF CONTRACT – COINS**<br>7. **BREACH OF CONTRACT – MOVIE**<br>8. **MONEY HAD AND RECEIVED**<br>9. **ACCOUNTING**<br>10. **CONVERSION – COINS**<br>11. **CONVERSION – MOVIE**<br>12. **UNJUST ENRICHMENT**<br>13. **PROMISSORY ESTOPPEL**<br>14. **BREACH OF FIDUCIARY DUTY** |

## I.  INTRODUCTION

1.      This case involves the abuse of friendship and trust by the individual Defendants to perpetuate fraud.

## II.  PARTIES

2.      Plaintiff <u>Kourosh Malekan</u> (hereinafter "Plaintiff") is, and at all relevant times mentioned herein was, an individual living in the County of Los Angeles, State of California.

3.      Plaintiff is informed and believes that Defendant <u>Peter Etesamnia, aka Pedram Etesamnia</u> ("Etesamnia") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

4.      Plaintiff is informed and believes that Defendant <u>Jalinous Nehouray</u> ("Nehouray") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

5.      Plaintiff is informed and believes that Defendant <u>Empire Global Mint</u> ("Empire") is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County.

6.      Plaintiff is informed and believes that Defendant <u>Pars Mint</u> ("Pars") is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles County.

7.      Plaintiff is informed and believes that Defendant <u>Demetrius Navarro</u> ("Navarro") is, and at all relevant times mentioned herein was, an individual residing in the County of Los Angeles, State of California.

8.      Plaintiff is informed and believes that Defendant <u>D Street Fims</u> ("D Street") is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles County.

9.      Plaintiff is uncertain of the true names and capacities of Defendants sued herein as Does 1 through 10, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave amend the Complaint to show their true names and capacities when such is ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants sued herein as DOES 1 through 10, inclusive, is in some manner legally responsible for the wrongful acts alleged herein.

10.    Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, each Defendant was the agent, employee, partner, member, subsidiary or related corporation, alter ego and/or joint venturer of each of the other Defendants and was acting within the course and scope of that relationship and with the knowledge, consent and/or ratification of each of the other Defendants.

11.    This action is not subject to the provisions of California Civil Code Section 1812.10 or Section 2984.4.


### III. ALTER EGO ALLEGATIONS

12.    At all times mentioned herein Defendants Etesamnia, Nehouray, and Does 1-10, and each of them, were and are the shareholders, and/or directors, and/or officers, and/or agents, and alter egos of Defendants Empire and Pars, and in doing the things herein described, were acting within the scope of their authority as such shareholders, and/or directors, and/or officers, and/or agents, and alter egos of Defendants Empire and Pars.

13.    There exists, and at all times herein mentioned existed, a unity of ownership between Defendants Etesamnia, Nehouray, and Does 1-10, on the one hand, and Defendants Empire and Pars and the other hand, such that any individuality and separateness between Defendants Etesamnia, Nehouray, and Does 1-10 and Defendants Empire and Pars have ceased and Defendants Empire and Pars are the alter egos of Defendants Etesamnia, Nehouray, and Does 1-10.

14.    Plaintiff is informed and believes that Defendants Empire and Pars are, and at all times herein mentioned were, the alter ego of Defendants Etesamnia, Nehouray, and Does 1-10 and there exists, and at all times herein mentioned has existed a unity of interest and ownership between such Defendants such that any separateness has ceased to exist and that Defendants Etesamnia, Nehouray, and Does 1-10 may have used the assets of the corporation for their personal use, causing the assets of the corporation to be transferred to them without adequate consideration, and that they also withdrew funds from Defendants Empire and Pars' bank accounts for their personal use.

–3–

15.     Plaintiff is informed and believes that Defendants Etesamnia, Nehouray, and Does 1-10, on one hand, and Defendants Empire and Pars, on the other hand, are and at all times herein mentioned were, alter egos of each other and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between such Defendants such that any separateness between them has ceased to exist in that Defendants Etesamnia, Nehouray, and Does 1-10 completely, controlled, dominated, managed and operated the corporate Defendants and commingled assets to suit the convenience of Defendants Etesamnia, Nehouray, and Does 1-10.

16.     Plaintiff is informed and believes that Defendants Empire and Pars are, and at all times herein mentioned were, a mere shell, instrumentality, and conduit through which Defendants Etesamnia, Nehouray, and Does 1-10 carried on their business in corporate name exactly as they had conducted prior to incorporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendants Empire and Pars and Defendants Etesamnia, Nehouray, and Does 1-10 does not exist and at all times herein mentioned did not exist.

17.     Plaintiff is informed and believes that at all times mentioned herein, including but not limited to the time they entered into the contracts with Plaintiff, Defendants Empire and Pars were severely undercapitalized and were unable to satisfy their financial obligations to Plaintiff such that the adherence to the fiction of separate existence between Empire and Pars, on one hand, and Etesamnia, Nehouray, and the Doe Defendants, and on the other hand, would sanction fraud and promote injustice.

18.     Plaintiff is informed and believes that adherence of fiction of separate existence of Defendants Empire and Pars as entities distinct from Defendants Etesamnia, Nehouray, and Does 1-10 would permit an abuse of the corporate privilege and sanction fraud and promote injustice, as the alter ego Defendants have deliberately rendered the corporate Defendants financially unable to respond to money judgment.

– 4 –

# IV. FACTS

*The Commemorative Coins*

19.     Plaintiff Kourosh Malekan and Defendant Nehouray were friends for many years.

20.     On or about October 15, 2007, Defendant Nehouray introduced Plaintiff to Defendant Etesamnia and told him about a business idea that Defendant Nehouray was planning to execute with Defendant Etesamnia. In particular, Defendants Nehouray and Etesamnia revealed to Plaintiff that they had formed two companies for the purpose of producing commemorative gold coins for sale to the public.

21.     To that end, Nehouray represented to Plaintiff that they had formed two companies for the purpose of executing these plans: 1) Defendant Pars Mint, Inc. and 2) Defendant Empire Global Mint, Inc.

22.     Defendants Nehouray and Etesamnia represented to Plaintiff that Defendant Pars was formed to produce and sell a gold coin commemorating Iranian Statesman Amir Kabir, a historical figure famous in Iran (there is a long tradition of Iranians taking gold coins as gifts for each other for various celebratory events, including weddings).

23.     Defendants Nehouray and Etesamnia also represented to Plaintiff that Defendant Empire Global Mint was formed for the purpose of producing and selling coins bearing licensed images from Fox studios, Playboy and other famous brands.

24.     In fact, Defendants provided Plaintiff with a conceptual design of the Amir Kabir coin – thus showing their work on the mold was imminent.

25.     Defendants Nehouray and Etesamnia further represented to Plaintiff that there is extensive demand for the coins and that in return for a $160,000 investment in the two companies, he would receive a 50% equity stake in each of the two companies.

26.     Over the next 30 days, Plaintiff gave Defendants $160,000 in cash and checks.

27.     Soon after providing the funds to the Defendants, however, Defendants Nehouray and Etesamnia started asking Plaintiff for more funds, representing that the costs of development and production of the coins are higher than what they expected, but that their

–5–

licensing plans are progressing so well that they will soon have the rights to produce coins for multiple major licensees including, but not limited to, Fox and Playboy.

28.      During this time Plaintiff Malekan was the primary caregiver to his cancer ridden father and was unable to devote a lot of time to following Defendants' progress. As such, and based on his longtime friendship with Defendant Nehouray, and Defendants' multiple assurances that the project was moving along, over the next year, Plaintiff provided Defendants with another $200,000 in cash and checks.

29.      In 2009, although there was still no production of the coins, Defendants showed Plaintiff a "sample" Amir Kabir coin and show him plans for other coins that are "about to be produced." As such, Defendants kept stringing Plaintiff along with promises of riches from coins. In fact, in November 2009, Plaintiff made one last payment to Defendants in the amount of $12,500.

30.      Until in or about June 2010, Defendants Nehouray and Etesamnia continued to give Plaintiff updates on the alleged work they were doing on the project and continued to state they were moving forward on the plan to manufacture the coins.

31.      To date, however, Defendants have not only been unable to produce a single commemorative coin, they have been unable to produce the mold that was to serve as the basis of the coins.

32.      Plaintiff has made multiple demands from Defendants for an accounting of the monies that he provided them and a mold of the coin(s), but to date, Defendants have refused to provide him with anything.


*The Movie Production Investment*

33.      In, or about, October 27, 2008, Defendants Nehouray and Etesamnia approached Plaintiff with an investment opportunity in a movie.  Defendants Nehouray and Etesamnia presented to Plaintiff that they had invested in a film project, and that he too should invest in the project.  As such, they introduced Plaintiff to Defendant Navarro.

34.    Prior to making an investment, Plaintiff met with Defendant Demetrius Navarro who told him that he is the President of Defendant D Street and that Defendants Nehouray and Etesamnia had already invested in Defendant D Street and that the purpose of the investment was to create a movie.

35.    The terms of the investment were as follows: 1) Plaintiff would get credit as "Co-Executive Producer;" and 2) Plaintiff would receive 13.33% of the films' gross receipts.

36.    Based upon Defendants Nehouray, Navarro and Etesamnia's representations that: 1) Nehouray and Etesamnia had invested in the movie; 2) the movie was about to be made; and 3) the movie would be successful, in or about October 2008, Plaintiff invested $25,000 in a film project with Defendant D Street.

37.    Plaintiff is informed and believes that Defendants Nehouray and Etesamnia had in fact never invested in the movie, and that D Street Films and Demetrius Navarro were fronts for Defendants Nehouray and Etesamnia and that after Plaintiff invested $25,000 in the movie, Defendants Nehouray, Navarro and Etesamnia, split up his funds for their personal gain and that there was no movie to be made.

38.    Although Plaintiff has asked Defendants for information concerning the movie, and in spite of the fact that Defendants Navarro, Nehouray and Etesamnia have made multiple representations to Plaintiff that the movie is being made, to date, there is no movie and no accounting of Plaintiff's funds invested in the movie.

## V.  FIRST CAUSE OF ACTION

### FRAUD - COINS

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

39.    Plaintiff refers to paragraphs 1 through 38 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

40.    Starting on, or about, October 2007, and continuing until June 2010, Defendants, and each of them, engaged in a course of conduct, representations, and business pretenses whereby Defendants, and each of them, falsely and fraudulently represented to

FIRST AMENDED COMPLAINT

Plaintiff that: 1) they were starting a business to produce and sell commemorative coins;  2) they had experience in this business; 3) the monies received from Plaintiff were all going into the production of commemorative coins; 4) the cost of the production of the commemorative coins have ballooned beyond the initial $160,000 budget; 5) they had a mold of the Amir Kabir commemorative coin that was ready to be used in production of the coin; 6) they had experience and connections in the coin business; and 7) based upon their experience this would be a safe investment.

41.     The representations made by Defendants were in fact false. The true facts were that Defendants, and each of them, were using the "commemorative coins" as a ruse to separate Plaintiff from his money and that they had no intention of ever producing commemorative coins or giving Plaintiff his money back.

42.     When Defendants, and each of them, made the representations, they knew them to be false, and Defendants and each of them, made these representations with the intent to deceive and defraud Plaintiff and induce Plaintiff to act in the manner herein alleged.

43.     Plaintiff, at the time these representations were made by Defendants, and each of them, and at the time Plaintiff took the actions alleged, was ignorant of their falsity and believed them to be true. In reliance on these representations, Plaintiff was induced to and did act as indicated herein. Had Plaintiff known the actual facts, he would not have taken such action and given his funds to the Defendants. Plaintiff's reliance on these representations was justified because of the long standing friendship between him and Defendant Nehouray and the representations made to Plaintiff by the Defendants.

44.     As a proximate result of the fraud and deceit of Defendants, and each of them, as herein alleged, Plaintiff was induced to engage in business with Defendants, and each of them, by reason of which he has been damaged in an amount to be determined at trial but over the jurisdictional minimum of this Court, together with interest at the proper legal rate from October 2007.

45.     Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights

of Plaintiff. Plaintiff prays that this Court award punitive damages by way of example

against these Defendants to be determined by the Court at the time of trial within the

jurisdictional limits of this court.

## VI.  SECOND CAUSE OF ACTION

### FRAUD - MOVIE

### (Against All Defendants)

46.    Plaintiff refers to paragraphs 1 through 45 of this Complaint and incorporates those

paragraphs by reference as though fully set forth in this section.

47.    Starting on, or about, October 2007, and continuing until June 2010, Defendants,

and each of them, engaged in a course of conduct, representations, and business

pretenses whereby Defendants, and each of them, falsely and fraudulently represented to

Plaintiff that: 1) they were about to start production in a movie;  2) they had all invested in

the movie; 3) the monies received from Plaintiff were all going into the production of the

movie; 4) the Plaintiff would recoup his investment; 5) there would be profits from the

movie; and 6) Plaintiff would be able to participate in the profits.

48.    The representations made by Defendants were in fact false. The true facts were that

Defendants, and each of them, were using the "movie" as a ruse to separate Plaintiff from

his money and that they had no intention of ever producing a movie or giving Plaintiff back

any of the monies that he invested with them.

49.    When Defendants, and each of them, made the representations, they knew them to

be false, and Defendants and each of them, made these representations with the intent to

deceive and defraud Plaintiff and induce Plaintiff to act in the manner herein alleged.

50.    Plaintiff, at the time these representations were made by Defendants, and each of

them, and at the time Plaintiff took the actions alleged, was ignorant of their falsity and

believed them to be true. In reliance on these representations, Plaintiff was induced to and

did act as indicated herein. Had Plaintiff known the actual facts, he would not have taken

such action and given his funds to the Defendants. Plaintiff's reliance on these

–9–

representations was justified because of the long standing friendship between him and Defendant Nehouray and the representations made to Plaintiff by the Defendants.

51.    As a proximate result of the fraud and deceit of Defendants, and each of them, as herein alleged, Plaintiff was induced to engage in business with Defendants, and each of them, by reason of which he has been damaged in an amount to be determined at trial but over the jurisdictional minimum of this Court, together with interest at the proper legal rate from October 2007.

52.    Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights of Plaintiff. Plaintiff prays that this Court award punitive damages by way of example against these Defendants to be determined by the Court at the time of trial within the jurisdictional limits of this Court.

## VII. THIRD CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION - COINS

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

53.    Plaintiff refers to paragraphs 1 through 52 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

54.    When Defendants made the representations to Plaintiff as set forth in particular in the previously alleged paragraphs herein incorporated, they had no reasonable ground for believing these representations to be true and made the representations with the intent to induce Plaintiff into providing Defendants the monies previously alleged.

55.    As a result of Defendants' negligent misrepresentations, Plaintiff has been damaged in an amount to be determined at trial but over the jurisdictional minimum of this Court, together with interest at the proper legal rate from October 2007.

//

– 10 –

## VIII. FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION - MOVIE

## (Against All Defendants)

56.    Plaintiff refers to paragraphs 1 through 56 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

57.    When Defendants made the representations to Plaintiff as set forth in particular in the previously alleged paragraphs herein incorporated, they had no reasonable ground for believing these representations to be true and made the representations with the intent to induce Plaintiff into providing Defendants the monies previously alleged.

58.    As a result of Defendants' negligent misrepresentations, Plaintiff has been damaged in an amount to be determined at trial but over the jurisdictional minimum of this Court, together with interest at the proper legal rate from October 2007.

## IX. FIFTH CAUSE OF ACTION

## STATUTORY UNFAIR COMPETITION

## (Against All Defendants)

59.    Plaintiff refers to paragraphs 1 through 58 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

60.    The Defendants' conduct alleged herein, as well as the acceptance of the benefits of said acts by Defendants Etesamnia, Nehouray and Navarro, with knowledge of their wrongful source, constitutes unlawful, unfair and fraudulent competition and violates California Business & Professions Code § 17200.  In particular, Defendants: 1) stole, by false pretenses, Plaintiff's personal property; 2) failed to maintain proper, accurate and complete books and records for Defendants Empire and Pars; 3) made multiple misrepresentations about the status of Empire and Pars; 4) lied about how close they were to producing commemorative coins for sale; 5) failed to disclose to Plaintiff that Defendant D Street was a front for Defendants and that they had not invested in the film project; 6) had no intention of ever sharing any of the profits from the commemorative coins with the

– 11 –

Plaintiff; 7) even if they had intention of sharing profits with Plaintiff, they never did share the profits with the Plaintiff; 8) had no intention of producing any movie so that there was no "film project;" 7) even if there was a film project, they had no intention of sharing the profits from the movie with the Plaintiff or to give him proper credit.

61.    As a direct and proximate result of Defendants' intentional actions, Plaintiff has and will continue to suffer substantial pecuniary losses.

62.    Plaintiff is informed and believes that the Doe Defendants agreed and conspired to engage in the acts of unfair competition and that all Defendants encouraged, ratified and/or accepted the benefits of such acts of the others.

63.    Accordingly, Plaintiff is entitled to restitution of any benefits received by Defendants from their acts of unfair competition.

64.    Plaintiff also seeks appropriate injunctive relief to prevent Defendants from engaging any further in such acts of unfair competition.

65.    Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights of Plaintiff. Plaintiff prays that this Court award punitive damages by way of example against these Defendants to be determined by the Court at the time of trial within the jurisdictional limits of this Court.

## X. SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT - COINS

**(Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)**

66.    Plaintiff refers to paragraphs 1 through 65 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

67.    On or about October 2007, Plaintiff and Defendants entered into written contracts and/or agreements wherein Plaintiff agreed to provide certain sums of money to Defendants Nehouray and Etesamnia, in return for them using the money to produce

– 12 –

commemorative coins and provide Plaintiff 50% of the profits from the sale of

commemorative coins ("Agreement").

68.     Pursuant to said Agreement, Plaintiff has performed all of the terms and conditions

on his part to be performed. Any and all non-performance on Plaintiff's part was and is

excused by the Defendants' acts, omissions and/or other conduct.

69.     Defendants breached said Agreement by failing and refusing to use the funds to

produce commemorative coins and/or refusing to share the profits from these coins with the

Plaintiff.

70.      As a result of Defendants' breach of contract, Plaintiff has been damaged in an

amount to be determined at trial but over the jurisdictional minimum of this Court, together

with interest at the proper legal rate from October 2007.


## XI. SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT - MOVIE

### (Against Defendants Navarro, D Street and DOES 1-10)

71.     Plaintiff refers to paragraphs 1 through 70 of this Complaint and incorporates those

paragraphs by reference as though fully set forth in this section.

72.     On or about October 2007, Plaintiff and Defendants entered into written contracts

and/or agreements wherein Plaintiff agreed to provide certain sums of money to

Defendants D Street and Navarro, in return for "Co-Producer" credit and 13.33% of the

profits from a movie ("Agreement").

73.     Pursuant to said Agreement, Plaintiff has performed all of the terms and conditions

on his part to be performed. Any and all non-performance on Plaintiff's part was and is

excused by the Defendants' acts, omissions and/or other conduct.

74.     Defendants breached said Agreement by failing and refusing to use the funds to

produce a movie and/or refusing to give Plaintiff proper credit in the movie and/or sharing

the profits from the movie with the Plaintiff.

FIRST AMENDED COMPLAINT

75.    As a result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be determined at trial but over the jurisdictional minimum of this Court, together with interest at the proper legal rate from October 2007.

## XII. EIGHTH CAUSE OF ACTION

### MONEY HAD AND RECEIVED

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

76.    Plaintiff refers to paragraphs 1 through 75 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

77.    Within the past four (4) years, Defendants became indebted to Plaintiff for money had and received by Defendants for the use and benefit of Plaintiff.  Although demand therefore has been made, no part of such debt has been repaid and such debt remains due together with interest at the legal rate.

## XIII. NINTH CAUSE OF ACTION

### ACCOUNTING

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

78.    Plaintiff refers to paragraphs 1 through 77 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

79.    As a 50% owner of Defendants Empire and Pars, Plaintiff is entitled to a periodic accounting of the assets and liabilities of the entities. Plaintiff is informed and believes that Defendants Etesamnia and Nehouray maintain the books and records of Empire and Pars.

80.    Plaintiff has made repeated demands upon Defendants Etesamnia and Nehouray to provide him with an accounting of the activities, assets and liabilities of Empire and Pars and to make their books and records available to Plaintiff for review, but to date, they have refused.

81.    An accounting is necessary to determine the assets and liabilities of Empire and Pars and the respective rights, liabilities and interests of their shareholders.

– 14 –

82.    Plaintiff is entitled to an order requiring Defendants Etesamnia and Nehouray to provide the book and records, as well as an accounting of the assets and liabilities of Empire and Pars.

## XIV. TENTH CAUSE OF ACTION

### CONVERSION - COINS

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

83.    Plaintiff refers to paragraphs 1 through 82 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

84.    Plaintiff is informed and believes that throughout the time Defendants Etesamnia and Nehouray exercised control over Defendants Empire and Pars, Defendants have made profits from their activities as noted herein, and have willfully retained all such proceeds and refused to account for them to Plaintiff.

85.    Plaintiff is also informed and believes that Defendants converted such profits for their own personal use.

86.    Plaintiff is also informed and believes that Defendants have taken the funds Plaintiff provided to Empire and Pars and used it for their own personal benefit.

87.    Plaintiff is also informed and believes that Does 1-10 conspired with Defendants and assisted in, participated in and/or ratified their actions in such conversion, and have received, directly or indirectly, some of the proceeds of such acts of conversion.

88.    Plaintiff has duly made demand upon Defendants to account for said profits, but Defendants have refused to comply.

89.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial but above the jurisdictional minimum of this Court.

90.    Plaintiff is entitled to the return of the profits and all proceeds and rights pertaining to or derived from such profits.

91.    Plaintiff is entitled to an accounting and to a constructive trust on the profits and all proceeds and rights pertaining to or derived from such profits.

FIRST AMENDED COMPLAINT

92.    Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights of Plaintiff. Plaintiff prays that this Court award punitive damages by way of example against these Defendants to be determined by the Court at the time of trial within the jurisdictional limits of this court.

## XV. ELEVENTH CAUSE OF ACTION

### CONVERSION - MOVIE

### (Against All Defendants)

93.    Plaintiff refers to paragraphs 1 through 92 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

94.    Plaintiff is informed and believes that throughout the time Defendants Etesamnia, Navarro and Nehouray exercised control over Defendant D Street, Defendants have made profits from their activities as noted herein, and have willfully retained all such proceeds and refused to account for them to Plaintiff.

95.    Plaintiff is also informed and believes that Defendants converted such profits for their own personal use.

96.    Plaintiff is informed and believes that throughout the time Defendants Etesamnia, Navarro and Nehouray exercised control over Defendant D Street, Defendants converted the funds paid by Plaintiff to D Street for their own personal use and not their intended use.

97.    Plaintiff is informed and believes that Does 1-10 conspired with Defendants and assisted in, participated in and/or ratified their actions in such conversion, and have received, directly or indirectly, some of the proceeds of such acts of conversion.

98.    Plaintiff has duly made demand upon Defendants to account for said profits, but Defendants have refused to comply.

99.    As a proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial but above the jurisdictional minimum of this Court.

100.    Plaintiff is entitled to the return of the profits and all proceeds and rights pertaining to or derived from such profits.

101.    Plaintiff is entitled to an accounting and to a constructive trust on the profits and all proceeds and rights pertaining to or derived from such profits.

102.    Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights of Plaintiff. Plaintiff prays that this Court award punitive damages by way of example against these Defendants to be determined by the Court at the time of trial within the jurisdictional limits of this court.

## XVI. TWELFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

103.    Plaintiff refers to paragraphs 1 through 102 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

104.    Defendants Nehouray, Etesamnia and Navarro personally and directly benefitted from Plaintiff's investments in Defendants Empire and Pars, of which Defendants were in exclusive control.

105.    Specifically, Defendants converted assets belonging to Plaintiff for their own personal use. Moreover, Defendants took "loans" from Empire and Pars and other assets of Plaintiff without actual repayment, or even authorization to take such "loans."

106.    Furthermore, Defendants took salaries and charged fees to Empire and Pars and accepted unauthorized payments for work that they never did.

107.    The circumstances of Defendants unjust enrichment are such that Defendants should, in good conscience, make restitution to Plaintiff.

108.    As a proximate result of Defendants failure to make restitution, Plaintiff has suffered substantial damages in an amount to be proven at trial but above the jurisdictional minimum of this court.

## XVII. THIRTEENTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

### (Against Defendants Nehouray, Etesamnia, Empire, Pars and DOES 1-10)

109.    Plaintiff refers to paragraphs 1 through 108 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

110.    Defendants Nehouray and Etesamnia's promise to provide Plaintiff with 50% of the equity of Defendants Pars and Empire and 50% of their profits when they produced and sold gold coins was clear and unambiguous.

111.    As alleged herein, Plaintiff relied upon those promises to provide Defendants with hundreds of thousands of dollars.

112.    As alleged herein, Defendants have breached those promises.

113.    Plaintiff's reliance on Defendants' promises was reasonable and foreseeable.

114.    As a direct and proximate result of Defendants' acts, as alleged herein, Plaintiff has been damaged in an amount to be proven at trial but above the jurisdictional minimum of this Court.

## XVIII. FOURTEENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

### (Against Defendants Nehouray, Etesamnia and DOES 1-10)

115.    Plaintiff refers to paragraphs 1 through 114 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

116.    As alleged above, Defendants Nehouray and Etesamnia, and each of them, occupied or assumed a fiduciary, trust relationship with Plaintiff, by reason of their position as managers of Defendants Empire and Pars in which Plaintiffs invested.

117.    As such, Defendants Nehouray and Etesamnia owed Plaintiff a fiduciary duty, as well as other duties of trust and confidence.

118.    By engaging in the acts, omissions and misrepresentations alleged above, Defendants Nehouray and Etesamnia breached their fiduciary duties to Plaintiff.

– 18 –

Defendants' participation was both active and for the purpose of advancing their own interests or obtaining a personal financial advantage, to the detriment of Plaintiff.

119.    As a direct and proximate result of Defendants' breaches of fiduciary duty to Plaintiff, Plaintiff has been damaged in an amount to be determined at trial, but above the jurisdictional minimum of this Court.

120.    Plaintiff is informed and believes that in doing the things alleged herein, Defendants acted with malice, fraud and oppression and with ill-will and animus toward Plaintiff. Accordingly, Plaintiff seeks an award of punitive damages against Defendants, and each of them, according to their respective wealth and financial condition, in an amount sufficient to punish them and deter them from such misconduct in the future.

## XIX. PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  For compensatory damages according to proof;

2.  For interest, at the proper rate, from October 2007;

3.  For incidental damages;

4.  For attorneys' fees;

5.  For punitive damages in an amount to be determined at trial;

6.  For costs of the suit;

7.  For such other and further relief as is just and proper in this case.

– 19 –

FIRST AMENDED COMPLAINT

DATED: May 1, 2013

Respectfully submitted,

A|D|Y Law Group, P.C.


By:_____

    A. David Youssefyeh


Attorneys for Plaintiff,
KOUROSH MALEKAN

– 20 –

FIRST AMENDED COMPLAINT